IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TANNER L. TOMLINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-12-159-C |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Tanner L. Tomlinson ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of Defendant Commissioner's final decision denying Plaintiff's applications for supplemental security income and disability insurance benefits under the Social Security Act. After a thorough review of the pleadings, the record ("Administrative Record" or "AR"), and the parties briefs, the Court recommends that the Commissioner's decision be affirmed.

<u>I. BACKGROUND</u>

Plaintiff initiated these proceedings by filing applications seeking disability insurance benefits and supplemental security income payments on December 11, 2008. (AR 14.) In his Disability Report, Plaintiff alleged that heart problems, high blood pressure, neuropathy, and type 2 diabetes limited his ability to work. (AR 99.) Plaintiff alleged a disability onset date of December 11, 2008.[1] (AR 14.) Plaintiff's claims were denied and, at his request, an

---

[1] Plaintiff originally alleged an onset date of June 30, 2008. (AR 99.) However, this date was amended to reflect the last date he worked. (AR 14, 261.)

Administrative Law Judge ("ALJ") conducted a hearing on July 20, 2010, where Plaintiff and a vocational expert testified. (AR 259-84.) In his December 2010 decision, the ALJ found that Plaintiff retained the capacity to perform work which was available in significant numbers in the national economy and, accordingly, was not disabled within the meaning of the Social Security Act. (AR 14-22.) Plaintiff sought review of the Commissioner's final decision in this Court after the Appeals Council of the Social Security Administration declined to review Plaintiff's case. (AR 5-8.)

## II. STANDARD OF REVIEW

The Court limits its review of the Commissioner's final decision to two inquiries: (1) whether substantial evidence supports the ALJ's factual findings and (2) whether the correct legal standards were applied. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). To conclude that substantial evidence exists, there must be "more than a scintilla, but less than a preponderance" of evidence, or "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court does not "'reweigh the evidence or substitute [its] judgment for the Commissioner's.'" Id. However, reversal is warranted if the ALJ failed "to provide this court with a sufficient basis to determine that appropriate legal principles have been followed." Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir. 1983)).

## III. DISCUSSION

2

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382(a)(3)(A). Regulations require the Commissioner to follow a five-step sequential process to evaluate a disability claim. See 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988). At steps one and two, the claimant must establish that he is not currently engaged in "substantial gainful activity" and that he has a medically severe impairment or combination of impairments. §§ 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii). If the claimant's impairment—or combination of impairments—equals a listed impairment, step three provides that the claimant is disabled. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the analysis proceeds to step four where the claimant's residual functional capacity ("RFC") is determined and his "past relevant work" is assessed. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant with the RFC to perform his past relevant work is not disabled. Id. A claimant who can no longer perform his past work moves to the fifth and final step where his RFC, age, education, and work experience are analyzed to determine whether he "can make an adjustment to other work." §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). An individual is disabled if he cannot make that adjustment. Id. Throughout the first four steps of the evaluation process, the claimant bears the burden of establishing a prima facie case of disability. Hacket, 395 F.3d at 1171. If the claimant successfully satisfies this burden, the burden of proof shifts to the Commissioner

who must prove at step five "that the claimant retains sufficient RFC to perform work in the national economy, given [his] age, education, and work experience." Id.

In the present case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date; that his diabetes, diabetic neuropathy, obesity, and hypertension constituted severe physical impairments; and that his impairments did not equal a listed impairment. (AR 16-18.) Accordingly, the ALJ proceeded to analyze Plaintiff's RFC under step four of the disability evaluation process. The ALJ concluded that Plaintiff has the RFC to perform "sedentary work . . . with nonexertional limitations." (AR 18.) Specifically, the ALJ found that Plaintiff can:

> occasionally climb ramps and stairs, balance, and stoop; never kneel, crouch, crawl, and climb ropes, ladders, or scaffolds; perform no work overhead; [but] can sit for about thirty (30) minutes at any one time before having to stand at the workstation for about five (5) minutes or less; and frequently, but not constantly, use upper extremities for fingering and feeling.

(Id.) Because all of the Plaintiff's past work exceeded his sedentary residual capacity, the ALJ concluded that Plaintiff could not perform any past work and moved to step five. (AR 20.) Under step five, the ALJ held that Plaintiff was not disabled because "there are jobs that exist in significant numbers in the national economy that the claimant can perform," considering Plaintiff's age of 44 years, his graduation from high school, and his RFC. (AR 20-21.) Plaintiff challenges the ALJ's step-five disability determination, arguing that (1) the ALJ's RFC determination is not supported by substantial evidence; (2) the ALJ's credibility determination applied the wrong legal standard and is not supported by substantial evidence; and (3) the ALJ's vocational analysis is not supported by substantial evidence.

A. The RFC Determination

Plaintiff first argues that "the ALJ erred in his finding that the Plaintiff retained the residual functional capacity (RFC) to perform the full range of sedentary work." (Pl.'s Brief, Dkt. No. 18, at 4.) However, as in Qualls v. Apfel, 206 F.3d 1368 (10th Cir. 2000), "[t]his argument is based on a misrepresentation of the record and is clearly without merit." Id. at 1371. The ALJ did not find that Plaintiff could perform the full range of sedentary work. Rather, the ALJ concluded that Plaintiff could perform only limited sedentary work that took into account Plaintiff's nonexertional limitations. (AR 18 ("After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work . . . with nonexertional limitations.") (emphasis added).) The Tenth Circuit has counseled that it "does not look favorably upon arguments founded on misrepresentations of the record" and referred an attorney to a disciplinary panel for making a misrepresentation almost identical to the one Plaintiff's counsel makes in this case. Qualls, 206 F.3d at 1371.

Plaintiff also misunderstands the burden analysis. Plaintiff correctly asserts that the burden of proof shifts to the ALJ at step five of the evaluation process and the ALJ must then prove that the claimant retains the RFC to perform work other than his past relevant work. (Pl.'s Br. at 4, 6.) However, the Plaintiff mistakenly construes this to mean that, at step five, the ALJ must produce evidence of the claimant's functional limitations. This is incorrect. Relying on a recent Social Security final rule, the Tenth Circuit has held that "the agency's burden at step five does not include the burden to provide medical evidence in support of an

5

RFC assessment."[2] Howard v. Barnhart, 379 F.3d 945, 948 (10th Cir. 2004) (citing Rules & Regulations, 68 Fed. Reg. 51,153, 51,155 (Social Security Admin. Aug. 26, 2003).) (emphasis added). The RFC determination is made only once: after step three, at the beginning of step four, when the claimant still bears the burden of proof. See 68 Fed. Reg. at 51,154-55. Plaintiff has the burden of proving his disability by furnishing medical and other evidence to the ALJ for the ALJ's use in drawing a conclusion about the effect of Plaintiff's impairments on his ability to work on a sustained basis. 68 Fed. Reg. at 51,155 (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). Importantly, the rule clarification explains that the burden shifts at step five only because it would be unreasonable to require the claimant to produce vocational evidence, for which experts are often necessary. See id. But the clarification reiterates

---

[2] While the ALJ does not have the burden of supporting an RFC assessment with medical evidence, the ALJ does have a duty to develop the record in order to include a complete medical history of at least the preceding twelve months. However, although Plaintiff includes a block quote discussing this duty (Pl.'s Br. at 6), as pointed out in Defendant's response brief, Plaintiff does not appear to actually argue that the ALJ did not properly develop the record. (Def.'s Br., Dkt. No. 21, at 8 n.2.) Because Plaintiff did not raise this argument, it is waived. See Murrell v. Shalala, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (holding that "a few scattered statements" in plaintiff's argument are merely "perfunctory complaints [that] fail to frame and develop an issue sufficient to invoke appellate review") (citing Adams-Arapahoe Joint Sch. Dist. v. Continental Ins. Co., 891 F.2d 772, 776 (10th Cir. 1989) (issue not formally designated is waived; mere mention in context of another matter is not enough)). Even then, the agency's burden is only to "make every reasonable effort to develop [the claimant's] complete medical history." Rules & Regulations, 68 Fed. Reg. 51,153, 51,155 (Social Security Admin. Aug. 26, 2003). As the ALJ in this case had Plaintiff's medical records, provided by his treating physicians, the record was sufficiently developed.

"[t]hat shift does not place on us [the agency] the burden of proving RFC." 68 Fed. Reg. at 51,155 (emphasis added).

Although Plaintiff has the burden of establishing his limited functionality, Plaintiff further attacks the ALJ's RFC analysis as "entirely fail[ing] to point to any minimal evidence, let alone substantial." (Pl.'s Br. at 5.) Plaintiff does not point to any evidence erroneously disregarded by the ALJ in formulating his RFC, as claimants often allege. See, e.g., Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003) (requiring ALJ to consider a medical opinion "and to provide specific, legitimate reasons for rejecting it").[3] Instead, Plaintiff asserts that "the ALJ pointed to no medical evidence in support of his finding and in fact admitted that there was no evidence '*from any source as to any limitations or restrictions assessed for the [Plaintiff]*.'" (Pl.'s Br. at 7 (quoting AR 20).) This, according to Plaintiff, compares favorably to Adkins v. Barnhart, 80 F. App'x 44 (10th Cir. 2003) (unpublished), where the Tenth Circuit reversed because of a "total lack of evidence." (Pl.'s Br. at 6-7 (citing Adkins, 80 F. App'x at 48).) Unfortunately, this reading of the ALJ's opinion is another misrepresentation by Plaintiff as the ALJ considered several types of evidence in his RFC formulation: (1) Plaintiff's medical records (AR 17-18); (2) Plaintiff's subjective complaints (AR 19); (3) Plaintiff's testimony about his activities of daily living

---

[3] See also Ledford v. Barnhart, 197 F. App'x 808, 810 (10th Cir. 2006) (finding error where ALJ failed to acknowledge opinions of two treating physicians and did not explain what weight he gave a third); Faulkner v. Astrue, No. CIV-11-865-R, 2012 WL 3848908, at *2 (W.D. Okla. Aug. 1, 2012) (finding reversible error where ALJ failed to reference finding of claimant's doctor that claimant was unable to perform any fingering).

(AR 19); and (4) the opinions of State Agency medical consultants (AR 20).[4]  Only after reciting all of the above evidence did the ALJ state that "[t]he medical evidence of record contains <u>no other</u> opinions/findings from any source as to any limitations or restrictions assessed for [Plaintiff]."  (AR 20.)

The RFC assessment "is made based on 'all of the evidence in the record, not only the medical evidence,'" so it is "'well within the province of the ALJ.'"  <u>Williamson v. Apfel</u>, ___ F. App'x ___, No. 99-5192, 2000 WL 1114177, at *1 (10th Cir. Aug. 7, 2000) (unpublished) (<u>quoting</u> <u>Dixon v. Apfel</u>, ___ F. App'x ___, No. 98-5167, 1999 WL 651389, at *2 (10th Cir. Aug. 26, 1999) (unpublished)).  Here, the ALJ stated that he came to his RFC assessment "[a]fter careful consideration of the entire record" (AR 18) and that he believed his "assessment [was] supported by the medical evidence of record considered as a whole and the claimant's reported activities of daily living" (AR 20).  "Where, as here, the ALJ indicates he has considered all the evidence," the practice of the Court "is to take the ALJ 'at [his] word.'"  <u>Wall v. Astrue</u>, 561 F.3d 1048, 1070 (10th Cir. 2009) (<u>quoting</u> <u>Flaherty v. Astrue</u>, 515 F.3d 1067, 1071 (10th Cir. 2007)).  Thus, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff retains an RFC for limited sedentary work.

B.  The Credibility Determination

---

[4] Plaintiff is correct that "[checkmark-style] evaluation forms, <u>standing alone</u>, . . . are not substantial evidence."  <u>Adkins</u>, 80 F. App'x at 48 (<u>citing</u> <u>Frey v. Bowen</u>, 816 F.2d 508, 515 (10th Cir. 1987) (emphasis added).  However, in this case, as explained, the ALJ relied on much more than just opinion evidence from the consulting medical experts.

With respect to Plaintiff's claims of pain and fatigue, the ALJ found Plaintiff's "allegations of limitations not fully credible." (AR 19.) The ALJ did not completely disregard Plaintiff's subjective complaints of pain. In fact, although the consulting State Agency physicians opined that Plaintiff could perform "light" work, the ALJ chose to limit Plaintiff's RFC to "sedentary," in order to "resolv[e] all doubt in favor of [Plaintiff]." (AR 20.) The ALJ only found "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms . . . not credible <u>to the extent</u> they are <u>inconsistent</u> with the [ALJ's] residual functional capacity assessment." (AR 19.) Plaintiff challenges the ALJ's credibility finding both as applying the incorrect legal standard and as lacking substantial evidence.

Plaintiff alleges that a "proper credibility analysis" involves a recitation and analysis of all of the factors set forth in <u>Thompson v. Sullivan</u>, 987 F.2d 1482 (10th Cir. 1993):

> "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence."

<u>Id.</u> at 1489 (quoting <u>Hargis v. Sullivan</u>, 945 F.2d 1482, 1489 (10th Cir. 1991)). Plaintiff thus finds reversible error in the ALJ's failure to "reference or discuss the Plaintiff's levels of medication, their effectiveness, the extensiveness of medical and non-medical attempts to obtain relief, [or the] frequency of medical contact." (Pl.'s Br. at 10.) However, the Tenth Circuit has more recently held that its precedent "'does not require a formalistic factor-by-

9

factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility.'" Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009) (quoting Qualls, 206 F.3d at 1372).

According to Social Security Ruling 96-7p, "[t]he regulations describe a two-step process for evaluating symptoms, such as pain [or] fatigue." SSR 96-7p, 1996 WL 374186, at *2; see 20 C.F.R. §§ 404.1529(c), 416.929(c).  First, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s)–i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques–that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p, at *2. If there is such an underlying impairment, the ALJ "must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Id. If an individual claimant's statements regarding the intensity, persistence, or functionally limiting effects of pain are not substantiated by objective medical evidence, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." Id. at *3. As the ALJ recited this standard practically verbatim (AR 19), the ALJ did not apply the incorrect legal standard by failing to cite Thompson.

After setting forth the correct standard, the ALJ proceeded to analyze the credibility of Plaintiff's statements regarding his pain and fatigue. The ALJ properly considered the factors found in SSR 96-7p and the regulations, including Plaintiff's daily activities. See 20

C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). In his brief, Plaintiff includes a quote from Thompson to the effect that "minimal daily activities" are insufficient to "'establish that a person is capable of engaging in substantial gainful activity.'" Thompson, 987 F.2d at 1490 (quoting Frey v. Bowen, 816 F.2d 508, 516-17 (10th Cir. 1987)). Plaintiff misunderstands this rule from Thompson. It is true that minimal daily activities are insufficient to undercut a claimant's testimony regarding his or her limitations. However, this does not make a claimant's daily living activities irrelevant to an ALJ's credibility determination. Two more recent Tenth Circuit cases provide guidance on the proper use of a disability claimant's daily activities.

In Hamlin v. Barnhart, 365 F.3d 1208 (10th Cir. 2004), the Tenth Circuit reversed an ALJ who concluded that a claimant's "pain testimony was 'credible only to the extent consistent with a residual functional capacity for a wide range of medium work activity'" based on the claimant's minimal daily activity of watching television. Id. at 1221 (emphasis added). Although the ALJ concluded that the claimant's "television watching constituted an activity requiring 'significant attention and concentration . . . inconsistent with severe and intractable pain,'" the Tenth Circuit disagreed, noting the claimant generally had "significantly reduced activities of daily living" and that "he performed no house or yard work and drove infrequently." Id. at 1221. In contrast, in a later case, where a Plaintiff reported approximately 31-54 hours of seated activities and 7-14 hours of standing activities per week, the Tenth Circuit distinguished Thompson and Hamlin and refused to find reversible legal error where an ALJ analyzed whether the plaintiff's daily living activities

undermined the credibility of her claimed limitations. Cobb v. Astrue, 364 F. App'x 445, 450-51 (10th Cir. 2010) (unpublished).

The present case is easily distinguishable from Hamlin and is more in line with Cobb. In this case, Plaintiff does more than the minimal activity of television watching each day. Unlike in Hamlin, Plaintiff "vacuums, grocery shops, cares for 3 dogs with help from son, does puzzles, plays computer games for about one hour and gets up and down." (AR 19.) Plaintiff also "go[es] out to restaurants at the beginning of the month and sometimes visits with grandchildren." (Id.) He "can handle household finances and bills," "[h]e uses a cell phone," "prepares simple 'heat and serve' meals daily," and "he has a driver's license and drives in town daily, and takes long trips monthly." (Id.) Thus, as in Cobb, it was appropriate for the ALJ to consider Plaintiff's daily activities when making his credibility determination. The ALJ carefully considered all the evidence and, accordingly, lowered Plaintiff's RFC from light to sedentary, given Plaintiff's testimony about his pain and fatigue. As required by Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995), the ALJ's finding on Plaintiff's credibility is supported by substantial evidence. Thus, it should not be upset. See Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990) ("Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.").

C.  The Vocational Finding

At step five, the ALJ must prove that Plaintiff "has the residual functional capacity (RPC) 'to perform other work in the national economy in view of his age, education, and

work experience.'" Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988) (quoting Bowen v. Yuckert, 482 U.S. 137, 142 (1987)).  At the beginning of step four, the ALJ determined that Plaintiff was limited to sedentary work with additional nonexertional limitations, including a qualification that Plaintiff can only sit for about thirty minutes at a time before having to stand for about five minutes or less.  (AR 18.)  The ALJ thus has the burden of proving that sufficient numbers of unskilled, sedentary positions exist in the national economy which can accommodate Plaintiff's extra limitations.  An ALJ may use a vocational expert to determine what types of positions a particular claimant qualifies for and in what numbers those jobs exist in the national economy.  20 C.F.R. §§ 404.1566(e), 416.966(e); see also Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993).

Plaintiff challenges the ALJ's vocational finding as lacking substantial evidence because "although a vocational expert was present at the hearing, . . . [a]t no time did the ALJ discuss or mention or examine his vocational expert to resolve the impact effect a sit/stand option would have on the sedentary work occupational base at Step Five." (Pl.'s Br. at 11.) Plaintiff argues that "if a claimant cannot sit for extended periods of time, then the range of sedentary jobs he or she can perform may be limited, especially in '[u]nskilled types of jobs[, which] are particularly structured so that a person cannot ordinarily sit or stand at will.'" (Pl.'s Br. at 11 (citing Soc. Sec. Rul. 83-12, 1983 WL 31253, at *4).)  It is true that some sedentary, unskilled positions require the worker to "be in a certain place or posture for at least a certain length of time to accomplish a certain task."  Soc. Sec. Rul. 83-12, at *4. However, contrary to Plaintiff's claim, the ALJ included this limitation in the hypothetical

13

question he posed to the testifying vocational expert. (AR 280-81.) The ALJ asked the expert what positions would be available for a hypothetical individual of the same age, education, and vocational background as Plaintiff, who could only perform sedentary work, and "[w]ho can sit for about 30 minutes before having to stand at the workstation for five minutes or less." (Id.) In response, the expert stated that such an individual could work as a security identification clerk, telephone quotation clerk, new account interviewer, or call out operator. (AR 281-82.) The expert informed the ALJ that 162,000 security identification clerk positions, 53,000 telephone quotation clerk positions, 202,000 new account interviewer positions, and 65,000 call out operator positions existed in the national economy. (Id.) Because the ALJ propounded a hypothetical question to the vocational expert that included all the limitations the ALJ included in his RFC assessment, the expert's answer served as substantial evidence for the ALJ's disability decision. See Qualls, 206 F.3d at 1173.

## IV. CONCLUSION

Because the ALJ's decision is supported by substantial evidence and analyzed pursuant to the correct legal standards, the Commissioner's decision is AFFIRMED. A judgment will enter accordingly.

IT IS SO ORDERED this 5th day of October, 2012.

ROBIN J. CAUTHRON
United States District Judge